1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   THOMAS BARBOSA, DECEASED, by          No.  2:20-cv-02298-JAM-DMC
     and through his Co-Successors
12   in Interest, LUPITA BARBOSA,
     individually and as mother and
13   next friend for K.B. and T.B.,        **ORDER GRANTING WITH LEAVE TO**
     minors; ANGELICA MARTINEZ-            **AMEND DEFENDANT SHASTA COUNTY'S**
14   VERA, individually; and               **MOTION TO DISMISS**
     KATHLEEN HOOD, individually,
15
                 Plaintiffs,
16
          v.
17
     SHASTA COUNTY, a public
18   entity, et al.,
19                Defendants.
20
21        On February 4, 2020, unidentified Shasta County Sheriff's

22   Office ("SCSO") deputies shot and killed Thomas Barbosa, a former

23   Marine and Iraq War veteran suffering from Post-Traumatic Stress

24   Disorder ("PTSD").  Compl. ¶ 21, ECF No. 1.  This lawsuit

25   followed.  Plaintiffs are surviving family members of Mr.

26   Barbosa: his wife, Lupita Barbosa, his biological children, K.B.

27   and T.B., his stepdaughter, Angelica Martinez-Vera, and his

28   mother, Kathleen Hood.  Id. ¶¶ 3-6.  Defendants are Shasta County

                                    1

1    (the "County") which operates the SCSO and Shasta County Sheriff-

2    Coroner Eric Magrini ("Magrini").  Id. ¶¶ 8-9.

3        Before the Court is the County's Motion to dismiss

4    Plaintiffs' second claim for municipal liability under 42 U.S.C.

5    § 1983 for failure to state a claim and to dismiss Plaintiffs'

6    fourth, fifth, sixth, and seventh state law claims for failure to

7    differentiate the allegations against the County from the other

8    Defendants.  Mot. to Dismiss ("Mot."), ECF No. 8.  Plaintiffs

9    filed an opposition, Opp'n, ECF No. 15, to which the County

10   replied, Reply, ECF No. 17.  For the reasons set forth below, the

11   Court GRANTS WITH LEAVE TO AMEND the County's Motion to Dismiss.[1]

12                         I.   BACKGROUND

13       Around 12:38 p.m. on February 4, 2020, Lupita Barbosa called

14   911 to request a welfare check for her husband, Thomas Barbosa,

15   whom she reported was breaking things around the house and

16   appeared to be hallucinating.  Compl. ¶ 22.  Mr. Barbosa, a 41-

17   year-old veteran, suffered from PTSD.  Id. ¶ 20.  Lupita told the

18   911 operator her husband needed help for his PTSD and

19   specifically requested that an ambulance, not SCSO deputies, be

20   sent.  Id. ¶ 22.  After placing the 911 call, Lupita and her two

21   minor children left the house and got into a car.  Id. ¶ 23.  Mr.

22   Barbosa followed them out of the house, telling Lupita he would

23   drive behind them in his truck because he was concerned for her

24   and the children's safety.  Id.  As Lupita was driving away,

25   someone from the SCSO called her and instructed her to lead Mr.

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for April 6, 2021.

                                    2

1   Barbosa to a nearby auction yard where SCSO deputies would

2   intercept him.   Id.   Lupita agreed to follow this plan, however,

3   when she eventually pulled over at the auction yard, Mr. Barbosa

4   noticed the SCSO deputies and drove away.   Id.

5       A pursuit ensued.   Id. ¶ 24.   SCSO deputies along with a CHP

6   helicopter tracked Mr. Barbosa as he drove down a rural highway

7   and eventually drove up a small embankment to a steep cliff.   Id.

8   ¶ 25.   He paused for a few minutes then drove off the cliff.   Id.

9   His truck rolled over a few times before stopping against a tree.

10  Id.   SCSO deputies found Mr. Barbosa alive and conscious but

11  trapped in the truck.   Id.   The deputies believed Mr. Barbosa had

12  a knife and that "jaws of life" would be needed to extract him

13  from the truck.   Id.   Around 2:28 p.m., an unidentified deputy

14  shot and killed Mr. Barbosa with a single round to the chest from

15  a .223-caliber rifle.   Id.

16      In response, Plaintiffs filed this civil rights, wrongful

17  death, and survival action against Defendants.   See generally

18  Compl.   While the complaint contains eight counts, the present

19  Motion concerns only certain claims against the County Defendant:

20  the second count for municipal liability under 42 U.S.C. § 1983,

21  and the fourth, fifth, six, and seventh state law counts.   Compl

22  ¶¶ 40-46, 56-81.   The County moves to dismiss these claims under

23  Federal Rule of Civil Procedure 12(b)(6).   Mot. at 4-15.

24                          II.   OPINION

25      A.   Legal Standard

26      A Rule 12(b)(6) motion challenges the complaint as not

27  alleging sufficient facts to state a claim for relief.   Fed. R.

28  Civ. P. 12(b)(6).   "To survive a motion to dismiss [under

                                3

1  12(b)(6)], a complaint must contain sufficient factual matter,

2  accepted as true, to state a claim for relief that is plausible

3  on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

4  (internal quotation marks and citation omitted).  While

5  "detailed factual allegations" are unnecessary, the complaint

6  must allege more than "[t]hreadbare recitals of the elements of

7  a cause of action, supported by mere conclusory statements."

8  Id.  "In sum, for a complaint to survive a motion to dismiss,

9  the non-conclusory 'factual content,' and reasonable inferences

10 from that content, must be plausibly suggestive of a claim

11 entitling the plaintiff to relief." Moss v. U.S. Secret Serv.,

12 572 F.3d 962, 969 (9th Cir. 2009).

13        B.   Analysis

14             1.   Second Count: Monell Claim

15      The County first moves to dismiss Plaintiffs' second count –

16 a Monell claim against the County based on (1) unconstitutional

17 customs, policies, and practices, (2) failure to train, and

18 (3) ratification – contending Plaintiffs' allegations as to this

19 count are conclusory and lack sufficient factual matter to state

20 a claim.  Mot. at 4-10; Reply at 1-3.

21      Municipalities may be held liable under Section 1983 for

22 constitutional injuries inflicted through a municipal policy or

23 custom.  Monell v. Dep't of Soc. Servs. of City of New York, 436

24 U.S. 658, 694 (1978).  Among the ways a plaintiff may establish

25 municipal liability is by demonstrating that: (1) the

26 constitutional tort was the result of a longstanding practice or

27 custom that constitutes the standard operating procedure of the

28 local government entity; (2) an official with final policy-making

4

1  authority delegated that authority to, or ratified the decision

2  of, a subordinate; or (3) the municipality failed to adequately

3  train the tortfeasors.  Price v. Sery, 513 F.3d 962, 966 (9th

4  Cir. 2008) (internal quotation marks and citation omitted).  To

5  properly plead a Monell claim, plaintiff "may not simply recite

6  the elements of a cause of action, but must contain sufficient

7  allegations of underlying facts to give fair notice and to enable

8  the opposing party to defend itself effectively."  AE ex rel.

9  Hernandez v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012)

10  (internal citations omitted).

11      As an initial matter, Plaintiffs' counsel insists their

12  method of pleading has been "repeatedly approved by judges in the

13  Eastern and Northern Districts."  Opp'n at 6.  Yet, the authority

14  Plaintiffs' counsel cites to and the legal standards applied

15  therein, which counsel insists have also been met here, are not

16  the applicable ones.  For instance, Plaintiffs cite to

17  Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002) (applying the

18  Conley notice pleading standard).  Opp'n at 4.  But, as the

19  County points out, the notice pleading standard applied in

20  Swierkiewicz was abrogated by the Supreme Court in Twombly and

21  Iqbal and replaced by a stricter plausibility standard.  Reply at

22  1.  The Ninth Circuit too has been clear that the Twombly-Iqbal

23  plausibility standard governs Monell claims.  AE ex rel.

24  Hernandez, 666 F.3d at 637.  In short, the authority Plaintiffs

25  rely on do not provide the relevant legal standard under which

26  Monell claims are assessed.  Rather, Plaintiffs' allegations must

27  meet the applicable plausibility standard.

28  ///

1                     a.   <u>Custom, Policy, or Practice</u>

2       Plaintiffs' allegations regarding the County's

3 unconstitutional customs, practices and procedures are set forth

4 in paragraph 41 of the complaint.  Compl. ¶ 41; <u>see also</u> Opp'n at

5 7-8 (referring the Court to ¶ 41(a-h)).  The County argues these

6 allegations are conclusory and lack sufficient factual content to

7 state a claim.  Mot. at 4-6.

8       When asserting a <u>Monell</u> claim based on an unconstitutional

9 custom, policy, or practice, plaintiffs must set forth "more than

10 a bare allegation that government officials' conduct conformed to

11 some unidentified government policy or custom." <u>AE ex rel.</u>

12 <u>Hernandez</u>, 666 F.3d at 637.  As another Eastern District of

13 California court has explained, conclusory statements

14 "unsupported by any factual allegations as to what that 'policy,

15 custom and practice' consists of, who established it, when, or

16 for what purpose, [do] not sufficiently allege a basis for <u>Monell</u>

17 liability." <u>Lutz v. Delano U.S.D.</u>, No. 1:08-cv-01787, 2009 WL

18 2525760 at *5 (E.D. Cal. Aug. 7, 2009)(internal citations

19 omitted).

20       Here, the Court finds the allegations contained in paragraph

21 41 of the complaint are improperly pled conclusory statements.

22 <u>See Iqbal</u>, 556 U.S. at 679.  Because Plaintiffs' "grab bag of

23 allegations" regarding the County's customs, policies, and

24 practices is unsupported with facts, Plaintiffs have not stated a

25 plausible <u>Monell</u> claim.  <u>Kollin v. City of Tehachapi</u>, No. 1:18-

26 cv-00617, 2018 WL 4057491 at *5 (E.D. Cal. Aug. 24, 2018)

27 (dismissing plaintiffs' <u>Monell</u> claim because the "grab bag of

28 allegations concerning the City's policies" were not "supported

1  with facts").

2              b. <u>Failure to Train</u>

3      Plaintiffs' allegations regarding the County's failure to

4  properly train SCSO deputies on how to engage with mentally ill

5  individuals are principally set forth in paragraphs 23-26, 41(c-

6  e), and 41(j) of the complaint.  Compl. ¶¶ 23-26, 41; <u>see also</u>

7  Opp'n at 10-11 (referring the Court to these paragraphs).  The

8  County again contends these allegations are conclusory and lack

9  sufficient factual content to state a claim.  Mot. at 6-7.

10     When asserting a <u>Monell</u> claim predicated on inadequate

11 training, a plaintiff must allege the:(1) decedent was deprived

12 of a constitutional right; (2) the policy amounts to deliberate

13 indifference to constitutional rights of persons whom officers

14 are likely to interact with; and (3) the constitutional injury

15 would have been avoided had the officers been properly trained.

16 <u>Flores v. County of Los Angeles</u>, 758 F.3d 1154, 1158-59 (9th Cir.

17 2014).  Further, an Eastern District of California court has

18 required plaintiffs to allege what the training practices were,

19 how those practices were deficient, and how the training

20 practices caused plaintiff's harm.  <u>Young v. City of Visalia</u>, 687

21 F.Supp.2d 1141, 1149-1150 (E.D. Cal. 2009) (explaining that

22 "without identifying the training . . . practices, how those

23 practices were deficient . . . the Court cannot determine if a

24 plausible claim is made for deliberately indifferent conduct.")

25     Here, Plaintiffs do not sufficiently describe what training

26 SCSO deputies did or did not receive or how these practices were

27 deficient, nor do they causally connect deficiencies in the

28 training to Mr. Barbosa's death.  Nor do Plaintiffs save their

1  failure to train claim by arguing that "sometimes a

2  municipality's failure to supervise is self-evident by the facts

3  of a single incident."  Opp'n at 9.  Indeed, the County has

4  brought forward authority to the contrary, that courts can and do

5  dismiss such claims "where a plaintiff alleged a single incident

6  of unconstitutional conduct as the basis for their Monell claim."

7  Reply at 2 (citing to Cain v. City of Sacramento, No. 2:17-cv-

8  00848 2017 WL 4410116 at *3 (E.D. Cal. Oct. 3, 2017)).  The

9  single incident alleged here, namely the events leading to Mr.

10 Barbosa's death, is insufficient to support Plaintiffs' failure

11 to train claim.  Accordingly, this claim is dismissed.

12                     c.   Ratification

13     Plaintiffs' allegations regarding the County's ratification

14 of unconstitutional actions by SCSO deputies are set forth in

15 paragraph 43 of the complaint.  Compl. ¶ 43; see also Opp'n at 12

16 (referring the Court to ¶ 43).  The County contends these

17 allegations are conclusory and lack sufficient factual content to

18 state a ratification claim.  Mot. at 8-10.

19     When asserting a Monell claim based on ratification, a

20 plaintiff "must allege facts that show that the authorized

21 policymakers approve a subordinate's decision and the basis for

22 it."  Petre v. City of San Leandro, No. 15-cv-03344, 2016 WL

23 31637 at *7 (N.D. Cal. Jan. 4, 2016) (internal quotation marks

24 and citations omitted).  Alleging "a mere failure to overrule a

25 subordinate's actions, without more, is insufficient."  Lytle v.

26 Carl, 382 F.3d 978, 987 (9th Cir. 2004).  Likewise, alleging a

27 "mere failure to discipline does not amount to ratification."

28 Adomako v. City of Fremont, No. 17-cv-06386, 2018 WL 2234179 at

1    *3 (N.D. Cal. May 16, 2018).

2          Here, Plaintiffs' allegations do not contain <u>facts</u> showing

3    the County approved of the unidentified SCSO deputies' actions

4    and decisions.  Rather, they merely state in conclusory terms

5    that "authorized policy makers within Shasta County" "approved of

6    the conduct and decisions of DOE Defendant" and "have made a

7    deliberate choice to endorse such conduct and decisions, and the

8    basis for them."  Compl. ¶ 43.  Contrary to Plaintiffs'

9    insistence that these allegations are sufficient, the Court finds

10   they are not.

11         In sum, because Plaintiffs have only alleged

12   unsupported conclusory statements, they have not plausibly

13   stated a <u>Monell</u> claim under any of the three theories they

14   advance: unconstitutional customs, policies, and practices,

15   failure to train, and ratification.  Accordingly, their

16   second count against the County is dismissed.

17              2.    <u>Fourth, Fifth, Sixth, and Seventh Counts</u>

18         The County also moves to dismiss Plaintiffs' fourth through

19   seventh state law counts as to any direct liability claim.  Mot.

20   at 10-15; Reply at 4-5.  The County's leading argument is that

21   for each of these counts, Plaintiffs have impermissibly lumped

22   all Defendants together, failing to identify and differentiate

23   the allegations of the County's wrongdoing from allegations

24   against the other Defendants.  Mot. at 10-12.[2]  According to the

25   _____

[2] The County raises two other arguments as to why any direct
26   liability portion of these four counts should be dismissed.  Mot.
     at 12-15.  First, Defendant argues that with respect to the fifth
27   count for negligence, sixth count for assault and battery, and
     seventh count for false arrest and imprisonment, Plaintiffs
28   failed to allege which enactment imposes a mandatory duty upon

1   County, Plaintiffs "cannot simply group all defendants together

2   in a count without some specification as to which defendant is

3   responsible for which wrong."  Mot. at 11.  The Court agrees.

4        It is well-settled that "undifferentiated pleading against

5   multiple defendants is improper."  <u>Corazon v. Aurora Loan Servs.,</u>

6   <u>LLC</u>, No. 11-cv-00542, 2011 WL 1740099 at *4 (N.D. Cal. May 5,

7   2011) (internal citation and quotation marks omitted); <u>see also</u>

8   Mot. at 11-12 (collecting cases).  Rather, the complaint "must

9   differentiate between each of the defendants and clearly state

10  the factual basis for each cause of action as to each specific

11  defendant."  <u>Fagbohungbe v. Caltrans</u>, No. 13-cv-03801, 2014 WL

12  644008 at *6, n. 4 (N.D. Cal. Feb. 19, 2014).

13       Notwithstanding the ample authority the County brings

14  forward in its Motion establishing the rule that undifferentiated

15  pleading is improper, Plaintiffs again respond with inapposite

16  authority.  Opp'n at 13.  Specifically, Plaintiffs cite to <u>Conley</u>

17  <u>v. Gibson</u>, 355 U.S. 41 (1957), for the proposition that

18  plaintiffs need only "give the defendant fair notice of what the

19  plaintiff's claim is and the grounds upon which it rests."  <u>Id.</u>

20  As discussed above, however, the Supreme Court has overruled

21  <u>Conley</u> and set aside <u>Conley</u>'s less strict notice pleading

22

23  the County as required to state a direct liability claim against
    the County.  Mot. at 12-14.  Second, Defendant argues that with
24  respect to Plaintiffs' fourth count for violation of Cal. Civ.
    Code § 52.1, any direct liability claim against the County fails
25  as a matter of law.  Mot. at 14-15 (citing to <u>Gonzalez v. County</u>
    <u>of Los Angeles</u>, 2008 U.S. Dist. LEXIS 73003 (C.D. Cal. July 28,
26  2008)).  The Court does not reach these additional arguments
    because it finds dismissal is warranted based upon Plaintiffs'
27  failure to differentiate allegations of wrongdoing against the
28  multiple Defendants.

1 standard, replacing it with plausibility standard set forth in

2 Twombly and Iqbal.

3      Further, Plaintiffs' attempt to distinguish the present case

4 from the County's long list of authority, see Mot. at 11-12, in

5 which courts dismissed complaints for failure to identify each

6 defendant's culpable conduct when pleading multiple claims

7 against multiple defendants, fails.  According to Plaintiffs,

8 their complaint is distinct from Canales and the County's other

9 cited authority because they have not lumped Defendants together

10 under one broad allegation; rather, they have pled specific

11 allegations of vicarious liability, see Compl. ¶¶ 62, 70, 74, 80.

12 Opp'n at 13.  Plaintiffs insist these vicarious liability

13 allegations "resolve any possible confusion."  Id.

14      This argument, however, mistakes the particular aim of the

15 County's 12(b)(6) challenge: in the Motion itself, the County

16 clearly states it "does not dispute that plaintiffs have

17 sufficiently alleged a claim for the County's vicarious liability

18 claim" and that it is only challenging any direct liability

19 portion of these counts.  Mot. at 14, fn.14; see also Reply at 4.

20 Thus, the Court agrees with the County that Plaintiffs' vicarious

21 liability allegations do not resolve the issue of whether

22 plaintiffs' other allegations broadly lumping together

23 "Defendants" are pleading direct liability claims against the

24 County too.  Reply at 4.  Indeed, because Plaintiffs do not

25 differentiate between each of the defendants and do not clearly

26 state the factual basis for each claim as to each specific

27 defendant, the Court cannot determine if a direct liability claim

28 against the County has been asserted in counts four through seven

1   or if Plaintiffs are only bringing vicarious liability claims
2   with respect to these counts.  Because this kind of
3   undifferentiated pleading against multiple Defendants is
4   improper, any direct liability portion of counts four through
5   seven as to the County must be dismissed.

6       Plaintiffs' additional arguments do not change this
7   analysis.  First, Plaintiffs contend that they are unable to
8   further differentiate their allegations of wrongdoing because the
9   County has not provided them with information about the
10  identities of involved officers or agents.  Opp'n at 13.  But as
11  the County points out, Plaintiffs need only separate the County
12  from the individual defendants as they did in their federal
13  claims.  Reply at 5.  Second, Plaintiffs argue that requiring
14  amendment "would be an exercise in pure formalism without any
15  practical purpose."  Opp'n at 15.  The Court disagrees.  As
16  currently pled, neither this Court nor the County can determine
17  whether counts four through seven include a direct liability
18  claim against the County in addition to a vicarious liability
19  claim.  Thus, amendment would serve at least two practical
20  purposes: providing notice to the County of whether they must
21  defend against direct liability claims and facilitating this
22  Court's ability to determine whether a plausible direct liability
23  claim has been stated.

24      C.   Leave to Amend

25      Courts dismissing claims under Federal Rule of Civil
26  Procedure 12(b)(6) have discretion to permit amendment, and there
27  is a strong presumption in favor of leave to amend.  Eminence
28  Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir.

1  2003).  "Dismissal with prejudice and without leave to amend is

2  not appropriate unless it is clear . . . that the complaint could

3  not be saved by amendment."  Id. at 1052 (internal citation

4  omitted).

5       Here, Plaintiffs seek leave to amend the complaint.  See

6  Opp'n at 15.  Since it may be possible for Plaintiffs to cure the

7  above-described deficiencies, the Court will grant them an

8  opportunity to rectify the errors in their dismissed claims and

9  file a First Amended Complaint.  Any amended complaint, however,

10  should contain facts that sufficiently show plausible causes of

11  action.

12                        III.  ORDER

13       For the reasons set forth above, the Court GRANTS WITH

14  LEAVE TO AMEND Defendant Shasta County's Motion to Dismiss.  If

15  Plaintiffs elect to amend their complaint, they shall file a

16  First Amended Complaint within twenty days (20) of this order.

17  The County's responsive pleading is due twenty days thereafter.

18       IT IS SO ORDERED.

19  Dated: April 26, 2021

20

21                                 _____
                                   JOHN A. MENDEZ,
22                                 UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28
                                   13