MICHAEL J. HADDAD (SBN 189114)
JULIA SHERWIN (SBN 189268)
TERESA ALLEN (SBN 264865)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
Telephone:     (510) 452-5500
Facsimile:     (510) 452-5510

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

THOMAS BARBOSA, DECEASED, by and
through his Co-Successors in Interest, LUPITA
BARBOSA, Individually, and as mother and Next
Friend for K.B. and T.B., minors; ANGELICA
MARTINEZ-VERA, individually; and KATHLEEN
HOOD, individually,

                Plaintiffs,

vs.

SHASTA COUNTY, a public entity; SHASTA
COUNTY SHERIFF'S SERGEANT JOSE
GONZALEZ, in his individual capacity; SHASTA
COUNTY SHERIFF'S DEPUTY THOMAS
FLEMING, in his individual capacity; jointly and
severally,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:20-cv-02298-JAM-DMC

**PLAINTIFFS' MOTION TO
APPROVE MINORS'
COMPROMISE**

Hearing Date:  March 26, 2024
Time:  1:00 p.m.
Courtroom: 6, 14th Floor
Hon. John A. Mendez

1

## **NOTICE OF MOTION**

2

PLEASE TAKE NOTICE that on March 26, 2024, at 1:00 p.m., before the Honorable Judge John

3

A. Mendez, Courtroom 6, Fourteenth Floor, in the United States District Court for the Eastern District of

4

California, 501 I Street, Sacramento, CA 95814, Plaintiffs will move the Court to approve the minor's

5

compromises for Plaintiffs T.B. and K.B.

6

Plaintiffs, by and through their counsel, Haddad & Sherwin LLP, hereby move this Court to

7

approve the global settlement in the amount of $12 million for three adults and two children, with minor

8

Plaintiff T.B. receiving lifetime tax-free payments of $5,677,897.66 plus $50,000 in a trust to be used for

9

his health and education before he reaches age 18, and minor Plaintiff K.B. receiving lifetime tax-free

10

payments of $8,617,038.04, including $1,077.42 per month put into a trust for her health and education

11

before she reaches age 18.  Defendants have failed to respond to Plaintiffs' repeated requests to submit

12

this motion unopposed.  Because Plaintiffs' structured settlements must be fully funded no later than May

13

1, 2024, Plaintiffs request the Court to decide and approve the matter without a hearing.

14

This motion is based on the following Points and Authorities, as well as the Declarations of Lupita

15

Martinez Barbosa, Michael J. Haddad, and Julia Sherwin attached hereto.

16

17

Dated:  February 27, 2024               HADDAD & SHERWIN LLP

18

*/s/ Julia Sherwin*

19

JULIA SHERWIN
Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

POINTS AND AUTHORITIES ........................................................................................1

INTRODUCTION ..........................................................................................................1

PROCEDURAL BACKGROUND AND SETTLEMENT ...............................................1

STANDARD OF REVIEW .............................................................................................5

      1.      The Facts of the Case.............................................................................6

      2.      The Minor's Specific Claims ................................................................7

      3.      Recovery in Similar Cases ....................................................................9

      4.      Attorneys' Fees and Costs ..................................................................10

CONCLUSION.............................................................................................................13

1

2

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Bor v. PPC WSSC LLC*,
     No. 11-cv-03430-LHK,
     2012 U.S. Dist. LEXIS 58050, 2012 WL 1438779 (N.D. Cal. Apr. 25, 2012)....................5

*Dacaney v. Mendoza*,
     573 F.2d 1075 (9th Cir. 1978) ........................................................................................5

*District of Columbia v. County of San Diego*,
     No. 18-cv-0013-NLS,
     2021 U.S. Dist. LEXIS 263611, 2021 WL 9928552 (S.D. Cal. Sept. 20, 2021)...............12

*Frary v. Cnty. of Marin*,
     No. 12-cv-03928-MEJ,
     2015 U.S. Dist. LEXIS 16229, 2015 WL 575818 (N.D. Cal. Feb. 10, 2015) ....................10

*Garlick v. County of Kern*,
     No. 1:13-cv-01051-JLO,
     2016 U.S. Dist. LEXIS 97524 (E.D. Cal. July 22, 2016) ....................................................12

*Gonzalez v. City of Alameda*,
     CAND No. 4:21-cv-09733-DMR .......................................................................................13

*J.P. v. County of Alameda*,
     No. 17-cv-05679-LB,
     2023 U.S Dist. LEXIS 115131, 2023 WL 5004681 (N.D. Cal. July 5, 2023)....................12

*Lobaton v. City of San Diego*,
     No. 3:15-cv-1416-GPC-DHB,
     2017 U.S. Dist. LEXIS 93290, 2017 WL 2610038 (S.D. Cal. June 16, 2017) .................10

*Mitchell v. Riverstone Residential Grp.*,
     Civ.S-11-2202 LKK/CKD,
     2013 U.S. Dist. LEXIS 55176, 2013 WL 1680641 (E.D. Cal. Apr. 17, 2013) ....................9

*Napier v. San Diego County*,
     No. 3:15-cv-00581-CAB-(KSC),
     2017 U.S. Dist. Lexis 196223; 2017 WL 5759893 (SD Cal. Nov. 28, 2017) ....................10

*Nephew v. Santa Rosa Mem'l. Hosp.*,
     No. 15-cv-01684-JSC,
     2015 U.S. Dist. LEXIS 139361,
     2015 WL 5935337 (N.D. Cal. Oct. 13, 2015)...........................................................5, 9, 12

*R.D.G. v. City of Bakersfield*,
        No. 1:13-cv-02057-JLT,
        2015 U.S. Dist. LEXIS 131696, 2015 WL 5732615 (E.D. Cal. Sept. 28, 2015) ...............12

*Riddle v. Amtrack*,
        No. 3:14-cv-01231-JLS,
        2014 U.S. Dist. LEXIS 157237, 2014 WL 5783825 (S.D. Cal. Nov. 5, 2014)...................12

*Robidoux v. Rosengren*,
        638 F. 3d 1177 (9th Cir. 2011) ...................................................................................passim

*S.A.C. v. County of San Diego*,
        No. 17-cv-01893-LAB,
        2020 U.S. Dist. LEXIS 209344, 2020 WL 6559139 (S.D. Cal. Nov. 9, 2020)...................12

*Schwall v. Meadow Wood Apts.*,
        No. CIV. S-07-0014 LKK,
        2008 U.S. Dist. LEXIS 18819, 2008 WL 552432 (E.D. Cal. Feb. 27, 2008).....................11

*Townsend v. County of Santa Cruz*,
        No. 19-cv-00630-BLF,
        2021 U.S. Dist. LEXIS 219278 (N.D. Cal. Nov. 12, 2021)................................................12

<u>Federal Statutes</u>

42 United States Code § 1983...........................................................................................8, 10

42 United States Code § 1988.................................................................................................8

<u>California Statutes</u>

California Civil Code § 52.......................................................................................................8

California Civil Code § 52.1....................................................................................................8

California Code of Civil Procedure § 1021.5 .........................................................................8

California Code of Civil Procedure §§ 377.20 et seq. ............................................................8

California Code of Civil Procedure §§ 377.60 et seq. ............................................................8

<u>Other Authorities</u>

*Cal. Practice Guide: Civ. Proc. Before Trial* §§ 12:576-12:577, 12-17 (2007)............................11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## POINTS AND AUTHORITIES

### INTRODUCTION

This Court is familiar with the facts and claims at issue, as this case settled only on the eve of trial and after this Court decided Defendants' motion for summary judgment and Plaintiffs' motion to certify as frivolous Defendants' interlocutory appeal of the denial of qualified immunity.

This motion comes after extensive negotiations, and two private mediations with mediator Richard Copeland, culminating in a settlement agreement between the parties on January 12, 2024. The total settlement amount, based on an accepted mediator's proposal, is $12,000,000. Plaintiffs provided this motion to Defendants on February 17, 2024, and requested defense counsel to allow the motion to be filed unopposed. Defense counsel did not respond. Plaintiffs' counsel further requested, on February 21 and 22, that defense counsel state whether they will oppose the motion. Defense counsel have not responded.

### PROCEDURAL BACKGROUND AND SETTLEMENT

Thomas Barbosa was shot and killed by Shasta County Sheriff's Sergeant Jose Gonzalez on February 4, 2020. Plaintiffs Lupita Barbosa (wife), T.B. (minor son, age 15), K.B. (minor daughter, age 8), Angelica Martinez-Vera (adult daughter), and Kathleen Hood (mother), brought this case on November 17, 2020, individually and on behalf of Thomas Barbosa, Deceased. The case was scheduled for trial on November 4, 2022. On October 12, 2022, Defendants filed an interlocutory qualified immunity appeal challenging the Court's denial of their summary judgment motion seeking qualified immunity. Plaintiffs moved to certify Defendants' appeal as frivolous. The Court vacated the trial date. On February 7, 2023, the Court granted the motion to certify the appeal as frivolous. (Doc. 74). Defendants voluntarily dismissed their appeal. Thereafter, the Court set a new trial date for March 9, 2024.

Plaintiffs have been represented by Michael J. Haddad and Julia Sherwin of the Oakland, California, civil rights law firm Haddad & Sherwin LLP, along with their associate attorneys, Teresa Allen and Brian Hawkinson, plus three paralegals. Plaintiffs' counsel did not become concerned in this matter at the instance of Defendants, and counsel have not received, and do not expect to receive, any compensation for counsel's services from any person other than the Plaintiffs pursuant to the retainer

agreement between counsel and Plaintiffs, and based on the settlement amount to which the parties have agreed.  (Declaration of Michael J. Haddad, ¶ 2).

Haddad & Sherwin LLP conducted extensive investigation and discovery in this case, and the case settled at an advanced stage of litigation, just before the pretrial conference.  (Haddad Decl. ¶ 3).  The parties produced approximately 7,500 Bates-stamped pages of documents, videos, and recordings in this case.  (Haddad Decl., ¶ 3).

Plaintiffs' counsel deposed the following witnesses:

1.      Defendant Shasta County Sheriff Sergeant Jose Gonzalez;

2.      Defendant Shasta County Sheriff Deputy Thomas Fleming;

3.      Shasta County Sheriff Deputy Chris Van Eyck;

4.      Shasta County Sheriff Deputy Harrison Garr;

5.      Shasta County Undersheriff Jason Barnhart;

6.      Shasta County Sheriff Eric Magrini;

7.      Redding Police Detective Jerid Heyne;

8.      CHP Investigator Timothy Roloff;

9.      CHP Investigator Christopher Dalin;

10.     Defendants' police practices expert, Robert Fonzi;

11.     Defendants' police practices expert, James Borden;

12.     Defendants' crime scene analyst, Rod Englert;

13.     Defendants' psychology expert, Kris Mohandie, Ph.D.

Plaintiffs' counsel also attended and/or defended the Defendants' depositions of the following witnesses:

14.     Plaintiff Lupita Barbosa;

15.     Plaintiff Angelica Martinez-Vera;

16.     Plaintiff T.B;

17.     Plaintiff K.B;

18.     Plaintiff Kathleen Hood;

19.    Plaintiffs' police practices expert, Jack Ryan;

20.    Plaintiffs' police canine expert, Ernest Burwell;

21.    Plaintiffs' crime scene forensics expert Thomas Martin;

22.    Plaintiffs' addiction medicine and psychiatry expert, Larissa Mooney, M.D.;

23.    Plaintiffs' audio/video expert, Paul Endo.

(Haddad Decl., ¶ 4).

Plaintiffs' counsel also conducted two focus groups with mock jurors concerning this case on December 13 and 14, 2022, and they worked extensively with a trial consultant to help prepare for trial. Plaintiffs' counsel also worked with an Emmy-award-winning video producer to create a video demonstrating the damages in this case.  (Haddad Decl., ¶ 5).

Plaintiffs' counsel also briefed and argued the following motions/discovery disputes:

1.  Defendants' motion to dismiss;

2.  Defendants' motion for summary judgment;

3.  Plaintiffs' motion to certify Defendants' interlocutory qualified immunity appeal as frivolous. Due to the counsel for both sides' earnest efforts to resolve several discovery disputes informally, both sides avoided having to file any discovery motions.  (Haddad Decl., ¶ 6).

Plaintiffs also completed all pretrial conference documents, including the joint pretrial statement, and annotated trial witness and exhibit lists.  (Haddad Decl., ¶ 6).

After the second mediation, with mediator Richard Copeland, the parties accepted a mediator's proposal on January 12, 2024, to settle all claims for $12,000,000.00.  (Haddad Decl., ¶ 7).  Plaintiffs have agreed to split the gross settlement amount with Lupita Babosa, Angelica Martinez-Vera, T.B., and K.B., having individual claims and sharing the survival claim, to receive $2.6 million each, and Kathleen Hood, having only an individual claim, to receive $1.6 million.  (Haddad Decl., **Ex. A**).   Please see the Declaration of Julia Sherwin and exhibits attached thereto for details about the settlement.  The further monetary breakdown is summarized as follows:

•       A 40% contingent attorneys' fee on the portions of the settlement allocated for adults, and a one-third contingent attorneys' fee on the portions of the settlement allocated for minors T.B. and K.B.

in the amount of $866,666.66 each (although the retainer agreement provides for an attorneys' fee of up to 40% of any recovery, as described in more detail below, Plaintiffs' counsel have agreed to reduce their attorneys' fees for the minors' claims to one-third of their recovery, reducing the attorneys' fees by $173,333.34 each, or a total of $346,666.68);

• Repayment to Plaintiff's counsel of costs, split equally between the five Plaintiffs, from the remainder of their shares, in the amount of $23,995.67 per plaintiff (Sherwin Decl. **Exhibit C,** Case Costs Ledger, Plaintiffs' counsel are waiving over $11,000.00 in interest on case costs advanced)[1];

• A trust fund for Plaintiff T.B. with $50,000 in cash for his health and education before age 18, plus $1,650,000 put into a structured settlement for him that will pay him in excess of $5.6 million over his lifetime;

• A trust fund and structured settlement for Plaintiff K.B. that will pay her in excess $8.6 million over her lifetime, including $1,077.42 per month in a trust fund before she reaches age 18 (due to her young age, her funds have more time to grow over her lifetime). (Sherwin Decl. ¶¶ 8-10, 14-17, Sherwin Decl. **Exhibits A** and **B**).

As further discussed in the Declaration of Julia Sherwin, Plaintiffs have consulted with Registered Nurse case consultant, Ann Koerner of National Care Advisors, to arrive at funds the children will need before age 18, due to their special needs. Both children have Post-Traumatic Stress Disorder and are behind in school, and need tutoring, adjustment counseling, vocational counseling, and case management. In addition, T.B. weighs in excess of 350 pounds and needs nutritional counseling and physical fitness assistance.

T.B.'s structured settlement has a present value of $1.65 million; K.B.'s structured settlement has a present value of $1.7 million. These payments are to be made on account of personal injury or sickness pursuant to Section 104(a)(2) of the Internal Revenue Code of 1986 (as amended), and accordingly are tax-exempt. Their annuities will provide a combination of annual and periodic payments beginning after age 18 as set forth in Sherwin Decl. **Exhibits A** and **B.**

---

[1] The Retainer Agreement provides for 6% simple interest on case costs advanced, which is less than the interest charged by Plaintiffs' counsel's bank if counsel were to borrow money to pay for case costs. The interest on case costs in this case is $11,000.00, which Plaintiffs' counsel are waiving.

The total tax-free guaranteed benefits paid are $3,372,933.91 for T.B. and $4,649,098.15 for K.B. The total tax-free expected payments for life are $5,677,897.66 for T.B., based on a normal remaining life expectancy of 59 years.  The total tax-free expected payments for life for K.B. are $8,617,038.04, based on a normal remaining life expectancy of 71 years.  (Sherwin Decl. **Exhibits A** and **B**).

Plaintiffs propose that the professional fiduciary selected to be Trustee of the trust be jointly selected by Plaintiffs' counsel and Lupita Martinez Barbosa.  Plaintiffs and Ms. Barbosa recommend Ryan De La Fuente, as the Trustee.  (Sherwin Decl. ¶ 25 and **Exhibit E**).

## STANDARD OF REVIEW

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F. 3d 1177, 1181 (9th Cir. 2011).  The court must conduct its own inquiry, "to determine whether the settlement serves the best interests of the minor.  *Id.* (quoting *Dacaney v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)).

In reviewing the settlement of federal claims, the court's duty "requires only that the district court determine whether the *net amount* distributed to each minor plaintiff in the proposed settlement is fair and reasonable, without regard to the proportion of the total settlement value designated for adult co-Plaintiffs and contracted by them with Plaintiffs' counsel.  If the net recovery of each minor plaintiff under the proposed settlement is fair and reasonable, the district court should approve the settlement as proposed." *Robidoux*, 638 F.3d at 1179.  District courts have also followed *Robidoux* when reviewing a proposed settlement of pendent state law claims in a federal civil rights action.  See *Nephew v. Santa Rosa Mem'l. Hosp.*, No. 15-cv-01684-JSC, 2015 U.S. Dist. LEXIS 139361 at *5, 2015 WL 5935337 (N.D. Cal. Oct. 13, 2015) ("where minors' claims arise under both federal and state law and the settlement is not claim-specific" the court follows *Robidoux*) (citing *Bor v. PPC WSSC LLC*, No. 11-cv-03430-LHK, 2012 U.S. Dist. LEXIS 58050, 2012 WL 1438779, at *3 (N.D. Cal. Apr. 25, 2012)).

The Ninth Circuit limits district courts' review "to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable in light of [1] the facts of the case, [2] the minor's specific claim, and [3] recovery in similar cases." *Id*. at 1181-82.

1    **1.   The Facts of the Case**

2         On February 4, 2020, at 12:25 p.m., Lupita Barbosa, called 9-1-1 and requested an ambulance

3    for her husband, Mr. Barbosa.  She told the dispatcher that Mr. Barbosa was a veteran experiencing

4    psychosis, imagining things that were not there, and that he was not a threat to himself or others.  That

5    information was eventually relayed to Defendants.  Shortly after, as she and the kids left in her minivan,

6    Mr. Barbosa got into his truck and followed them.

7         Defendant Gonzalez eventually attempted to pull-over Mr. Barbosa's truck, and Mr. Barbosa

8    fled.  A high-speed chase ensued, including with a CHP helicopter.  After deputies called off the pursuit,

9    Mr. Barbosa drove his truck down a steep hillside, sustaining major damage to the truck.  The involved

10   deputies responded again.  They descended the hill to the overturned truck with weapons drawn.  At the

11   truck, a deputy broke out the rear window of the truck and attempted to communicate with Mr. Barbosa.

12   The deputy called out "knife!" when he saw Mr. Barbosa holding a knife.

13        Defendant Sergeant Gonzalez moved into position over 30 feet away with an AR-15 rifle aimed

14   at the back of the truck cab.  Defendant Canine Deputy Fleming sprayed pepper spray into the truck to

15   try to force Mr. Barbosa to come out.  Deputy Fleming ordered Mr. Barbosa to come out or he would be

16   bitten by the sheriff's canine.  Sergeant Gonzalez warned that if he came out with the knife he would be

17   shot.  Minutes later, Mr. Barbosa made some ambiguous movements inside the truck and Sergeant

18   Gonzalez fired one gunshot, hitting Mr. Barbosa in his upper torso.  Sergeant Gonzalez explained that he

19   believed Barbosa was about to come out of the truck with a knife and that he could threaten Deputy

20   Fleming who he thought was nearby.  Actually, Fleming was over 23 feet away as measured afterward

21   by the CHP.

22        Mr. Barbosa was still inside the truck when Defendant Gonzalez shot him.  Minutes later,

23   Sergeant Gonzalez ordered Deputy Fleming to have his dog bite Mr. Gonzalez to try to drag his limp

24   body from the truck, which the dog did for about 24 seconds.  Deputies then pulled Mr. Barbosa out of

25   the truck.  Barbosa died at the scene.

26        Three different law enforcement agencies investigated this shooting: the Shasta County Sheriff's

27   Office, the Redding Police Department, and the California Highway Patrol.

28

1    Liability was hotly contested, with both sides naming two police practices experts, crime scene

2    analysts, and Defendants hired an expert psychologist who asserted that Mr. Barbosa was attempting to

3    commit "suicide by cop."

4    Defendants defended this case aggressively.  Throughout this litigation, Defendants asserted that

5    the officers tried to de-escalate the situation for several minutes while Mr. Barbosa actively resisted their

6    lawful orders and brandished a knife.  Defendants claimed that communication with Mr. Barbosa was

7    ineffective, and that he must have been intent to provoke them to shoot him.  Defendants stressed that the

8    officers had the best of intentions and an absence of any spite or intent to harm Mr. Barbosa.  Defendants

9    maintained that had Mr. Barbosa simply come out of the truck without the knife as ordered, Sergeant

10   Gonzalez would not have shot him.

11   Thomas Barbosa was severely mentally ill, with a total disability rating from the Veterans

12   Administration.  He had a severe methamphetamine abuse problem, and meth was found in his system at

13   the time of his death.  His mental illness and substance use problems resulted in multiple law enforcement

14   contacts over the years.  Lupita Barbosa had also detailed to a Redding police investigator how Thomas

15   had threatened her and had become violent with her on previous occasions.  He had left the family home

16   for approximately six months in the previous year.

17   T.B. and K.B. were only ages 11 and 4, respectively, at the time of their father's death.  They both

18   had a close and loving relationship with their father, who, despite suffering from mental illness and

19   methamphetamine use disorder, was a deeply loving and adoring parent when he was home and well.

20   **2.  The Minor's Specific Claims**

21   Plaintiffs T.B.'s and K.B.'s claims against Defendants after summary judgment and voluntary

22   dismissal of certain claims are as follows:

23   - Violation of Fourth Amendment – unreasonable seizure based on excessive force against

24      Defendants Gonzalez and Fleming;

25   - Violation of the Fourteenth Amendment – interference with familial association based on

26      the use of deadly force without a legitimate law enforcement purpose against Defendant

27      Gonzalez;

28

- Violation of the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) – against Shasta County;
- Violation of California Civil Code § 52.1 – Interference by threat, intimidation, coercion, or with reckless disregard for rights, with Thomas Barbosa's right to be free from unreasonable seizure excessive force, against all Defendants [survival claim only];
- Battery – against all Defendants;
- Negligence – against all Defendants.

(See Doc. 83, Joint Pretrial Statement, p. 11).

Plaintiffs T.B. and K.B. (along with their adult sister and mother) claimed the following damages on behalf of themselves and Thomas Barbosa, Deceased:

- Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (federal and state law wrongful death claims – non-economic damages);
- Emotional distress for violation of Fourteenth Amendment rights;
- Thomas Barbosa's loss of life, pursuant to federal civil rights law (survival claims);
- Thomas Barbosa's conscious pain and suffering pursuant to federal civil rights law (survival claims);
- Punitive damages against Defendants Gonzalez and Fleming for the federal claims only, under 42 U.S.C. § 1983;
- All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 and 52.1; and as otherwise may be allowed by California and/or federal law.

(See Doc. 83, p. 10).  Thomas Barbosa's mother, Kathleen Hood, had a Fourteenth Amendment claim for the loss of her son.

### 3.  Recovery in Similar Cases

Plaintiffs' counsel are unaware of any civil rights death case with minor plaintiffs in the State of California in the last ten years that resolved for more than $12,000,000.  Plaintiffs' counsel are aware of only three such cases (see tables at Haddad Decl., ¶¶ 8-9, *Martinez*, *Phounsy*, and *Gonzalez*) that provided a greater *net* recovery to a minor than the settlement proposed here, simply due to the number of plaintiffs sharing in the large settlement of the case here.  (Haddad Decl., ¶ 8.)

On January 24, 2024, Plaintiffs' counsel did a Lexis search for all settlements and verdicts in the State of California, state and federal courts, from January 1, 2014 to the present, with the search terms, "1983 and death and minor."  (Haddad Decl., ¶ 8.)  The vast majority of minor plaintiffs received much lower net recoveries, and several failed to prevail at all.  The results are set forth at Haddad Decl., ¶ 8.

In addition, Plaintiffs' counsel maintain a running table of the largest civil rights verdicts and settlements from around the country, and are aware of additional relevant case results that did not turn up in the Lexis search.[2]  Those results are set forth at Haddad Decl., ¶ 9.

The only California civil rights death cases with minor plaintiffs in the last decade that resulted in a larger gross recovery for minors would be (1) the *Lucky Phounsy* case (assuming that $12 million settlement was then split equally between the decedent's wife and two minor children), and the *Phounsy* settlement happened only after the plaintiffs had already won an $85 million verdict; (2) the $11,000,000 *Mario Gonzalez* case, which Plaintiffs' counsel just settled for a single minor plaintiff; and (3) the $7,300,000 *Martinez* case, which Plaintiffs' counsel settled in 2020, and which was split equally between two minor plaintiffs.  Thus, almost no child-plaintiff in a California civil rights death case in at least the last decade has received a larger net recovery than Plaintiffs T.B. and K.B. will receive under the terms of the proposed settlement.  With their structured settlements and trusts, T.B. is guaranteed to receive over $5.6 million tax-free throughout his lifetime, and K.B. is guaranteed to receive over $8.6 million tax-free throughout her lifetime.

---

[2] Plaintiffs' counsel's table of large civil rights verdicts and settlements does not include results less than $4,000,000 within the last ten years.  (Haddad Decl., ¶ 9.)

4. **Attorneys' Fees and Costs**

As stated above, it is appropriate to follow *Robidoux* when reviewing settlements of state and federal claims heard together.  See *Nephew, supra,* 2015 U.S. Dist. LEXIS 139361 at *5 (citing other cases); *Mitchell v. Riverstone Residential Grp*., Civ.S-11-2202 LKK/CKD, 2013 U.S. Dist. LEXIS 55176 at *5, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) (collecting cases); *Frary v. Cnty. of Marin*, No. 12-cv-03928-MEJ, 2015 U.S. Dist. LEXIS 16229 at *7, 2015 WL 575818, at *2 (N.D. Cal. Feb. 10, 2015); *Lobaton v. City of San Diego*, Case No. 3:15-cv-1416-GPC-DHB, 2017 U.S. Dist. LEXIS 93290 at *6, 2017 WL 2610038 (S.D. Cal. June 16, 2017) (applying *Robidoux* to state claims heard by supplemental jurisdiction).

*Robidoux* reversed a district court's rejection of a minor's settlement that would have designated 56% of the total settlement value for attorneys' fees.  638 F.3d at 1179.  The district court had based its rejection of the settlement on the local rules of several California courts, concluding that "attorneys are typically awarded a maximum of 25 percent of the total settlement award of a minor's claim, less costs, unless there are extraordinary circumstances warranting a greater award."  *Id*. at 1180-81.  In reversing that, the Ninth Circuit explained that the "typical practice" to apply state law and local rules governing an award of attorneys' fees "places undue emphasis on the amount of attorneys' fees provided for in a settlement instead of focusing on the net recovery of the minor plaintiffs under the proposed agreement." *Id*. at 1181.  "[I]n this context, the fairness determination is an independent, not a comparative, inquiry. Thus, the district court erred when it focused on the admittedly large proportion of the total settlement value going to Plaintiffs' counsel, instead of reviewing the fairness of each minor's net recovery in isolation."  *Id.* at 1182.

Notwithstanding the Ninth Circuit's requirement that district courts' review of settlements for minor plaintiffs must be done "without regard to the proportion of the total settlement value designated for adult co-plaintiffs and contracted by them with Plaintiffs' counsel," (*Robidoux*, 638 F.3d at 1179), some district courts have failed to follow that Ninth Circuit precedent and have still required "good cause" to approve more than a 25% attorneys' fee -- in particular, where there were no federal claims by the time of settlement.  For example, in *Napier v. San Diego County*, No. 3:15-cv-00581-CAB-(KSC), 2017 U.S.

1    Dist. Lexis 196223 at *9-10; 2017 WL 5759893 (SD Cal. Nov. 28, 2017), where summary judgment had

2    been granted on all federal 42 U.S.C. § 1983 claims and the only remaining claims were state law claims,

3    the court noted, "'most courts require a showing of 'good cause' to award more that 25% of any recovery'

4    whereas a greater reward is 'rare and justified only when counsel proves that he or she provided

5    extraordinary services.'" *Id.* (quoting *Schwall v. Meadow Wood Apts.*, No. CIV. S-07-0014 LKK, 2008

6    U.S. Dist. LEXIS 18819, 2008 WL 552432, at *1-2 (E.D. Cal. Feb. 27, 2008) (quoting 2 Weil & Brown,

7    *Cal. Practice Guide: Civ. Proc. Before Trial* §§ 12:576-12:577, 12-17 (2007)).

8           However, in the present case, the federal claims not only survive, but predominate.  The California

9    Bane Act claim only permits survival damages, and here, Thomas Barbosa's state law survival damages

10   were limited to funeral and burial expenses and state law punitive damages, which Plaintiffs waived.  The

11   only damages sought for the minor Plaintiffs' remaining state law battery and negligence claims were

12   their non-economic wrongful death damages for loss of their father's love, companionship, comfort, etc.

13   Plaintiffs T.B. and K.B. sought those same wrongful death damages based on their federal claims, *plus*

14   their own emotional distress damages for violation of their due process right to familial association, *plus*

15   their share of survival damages available only under federal civil rights law for Thomas Barbosa's loss of

16   life and conscious pain and suffering, *plus* punitive damages for violations of Thomas Barbosa's federal

17   rights.  Plaintiffs were not seeking punitive damages under California law due to the much higher

18   standard required for an award of punitive damages under state law and the potential for jury confusion

19   based on two different punitive damages instructions.

20          While not part of the *Robidoux* "fair and reasonable" analysis of this settlement, Plaintiff's

21   counsel's proposed reduced attorneys' fee of one-third of the minors' gross settlement shares also is fair

22   and reasonable.  First, the retainer agreement between Plaintiffs T.B. and K.B. (through their mother and

23   Next Friend, Lupita Barbosa) and Haddad & Sherwin LLP provides for an attorneys' fee of 33-1/3% of

24   the total recovery before a lawsuit is filed or 40% of the total recovery after a lawsuit is filed, and in the

25   case of a minor (child) at the time of recovery, those percentages are subject to court approval.  (Haddad

26   Decl., ¶ 10).  Additionally, if case costs were advanced for the client, as they were here, the client is

27   responsible to repay those costs with six percent simple interest from any "net recovery," defined as

28

"funds remaining after attorneys' fees have been paid from the total recovery."  (Haddad Decl., ¶ 10).

Plaintiffs' counsel have agreed to waive interest on case costs for these minor Plaintiffs.  *Id.*  Plaintiff's

counsel also have agreed to reduce their attorneys' fees from 40% to one-third, saving T.B. and K.B.

$173,333.34 each in attorneys' fees.  (Haddad Decl., ¶ 10).

Second, the one-third fee is fair and reasonable given the work and case costs expended.

Plaintiffs' counsel have represented them for four years in a costly and aggressively defended case.  This

case involved extensive discovery, 23 depositions, over 7,500 pages of documents, multiple videos and

other recordings, a substantial amount of time and resources devoted to expert witnesses, two dispositive

motions, and a great deal of trial preparation.  The case required Plaintiffs' counsel to forward more than

$120,000 in case costs over the course of four years.  (Haddad Decl., ¶ 11).

Third, the level of work and costs were so much that Haddad & Sherwin LLP turned away other

viable cases in order to have sufficient resources to win Plaintiffs the exceptional result here.  (Haddad

Decl., ¶ 12).  In light of these factors, the reduced one-third attorneys' fee also is fair and reasonable.

Under both *Robidoux* and state law, many district courts have approved minors' settlements with

attorneys' fees equal to or greater than the portion of the settlement Plaintiffs' counsel seeks here.  See

*Garlick v. County of Kern*, No. 1:13-cv-01051-JLO, 2016 U.S. Dist. LEXIS 97524 at *8-9 (E.D. Cal. July

22, 2016) (approving contracted 40% fee in restraint asphyxia case with federal and state claims); *S.A.C.*

*v. County of San Diego*, No. 17-cv-01893-LAB, 2020 U.S. Dist. LEXIS 209344 at *12-14, 2020 WL

6559139 (S.D. Cal. Nov. 9, 2020) (approving contracted 40% contingent fee as part of $1,350,000

settlement of police shooting case); *J.P. v. County of Alameda*, No. 17-cv-05679-LB, 2023 U.S Dist.

LEXIS 115131 at *4-5, 2023 WL 5004681 (N.D. Cal. July 5, 2023) (approving contracted 40% fee from

$3.5 million civil rights settlement); *Nephew, supra,* 2015 U.S. Dist. LEXIS 139361 at *9 ("requested

33% attorneys' fee award is reasonable in light of the signed contingency agreement and the early

resolution of this case"); *Townsend v. County of Santa Cruz*, No. 19-cv-00630-BLF, 2021 U.S. Dist.

LEXIS 219278 at *3-4 (N.D. Cal. Nov. 12, 2021) (approving contracted 40% fee from gross settlement of

$5,500,000); *District of Columbia v. County of San Diego*, No. 18-cv-0013-NLS, 2021 U.S. Dist. LEXIS

263611 at *15-16, 2021 WL 9928552 (S.D. Cal. Sept. 20, 2021) (approving 36% attorneys' fees; citing

cases approving fees between 25-40%); *R.D.G. v. City of Bakersfield*, No. 1:13-cv-02057-JLT, 2015 U.S. Dist. LEXIS 131696 at *10-11, 2015 WL 5732615 (E.D. Cal. Sept. 28, 2015) (one-third contingent fee approved); *Riddle v. Amtrack*, No. 3:14-cv-01231-JLS, 2014 U.S. Dist. LEXIS 157237 at *17-18, 2014 WL 5783825 (S.D. Cal. Nov. 5, 2014) (one-third contingent fee approved); *Gonzalez v. City of Alameda*, CAND No. 4:21-cv-09733-DMR (Doc. 206) (approving $11 million settlement for minor in restraint asphyxia case with one-third fee for plaintiff's counsel, Haddad & Sherwin LLP).

## CONCLUSION

The Ninth Circuit counsels, "[m]ost importantly, the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-Plaintiffs and contracted by them with Plaintiffs' counsel  So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Robidoux*, 638 F.3d at 1182.

This case could have resulted in an historically large verdict.  While this case had strong liability and substantial damages, it was not indefensible.  It also could have been lost or have resulted in a verdict well below the amount of the proposed settlement.  It surely would have taken many more years to resolve by trial and appeal, as Defendants already had shown their inclination to appeal.

No civil rights death case in at least the last decade has resulted in a greater overall recovery for plaintiffs, and exceptionally few cases could have provided a greater net share to minor Plaintiffs than T.B. and K.B. will receive under the proposed settlement.  And, importantly, the settlement will provide stability for T.B. and K.B. now, instead of years from now, while protecting them from the trauma of a trial.

Plaintiffs T.B. and K.B. respectfully submit that the proposed settlement for them is fair and reasonable under these circumstances.  The payment stream will provide a significant monetary foundation to assist T.B. and K.B. in paying for their education, housing expenses, and other primary financial needs throughout the course of their adult lives, with lifetime tax-free payments in excess of $14.2 million.  The Trustee-managed trusts will provide for T.B. and K.B.'s special educational and

psychological needs starting now.  Plaintiffs also request that this court approve Haddad & Sherwin LLP's requested one-third attorneys' fee for T.B. and K.B.'s share of the settlement in the amount of $866,666.66 each, and reimbursement of their proportional share of case costs in the amount of $23,995.67 each.

Plaintiffs request that this Court decide this matter on an expedited basis without a hearing, as the insurance companies for Plaintiff T.B.'s and K.B.'s structured settlement annuities have already provided firm amounts for their structured settlement payments, which must be funded no later than May 1, 2024. Plaintiffs request that the Court order Defendants to complete all necessary documents and fund the structured settlement annuities no later than April 12, 2024.

Plaintiffs' counsel also request that this Court order Defendants to provide either a check or wire transfer for the remaining $6,750,000.00 in settlement proceeds that are not being structured by any minor or adult Plaintiffs, made payable to "Haddad & Sherwin LLP Client Trust Account" for the benefit of Plaintiffs, with any check to arrive at the offices of Haddad & Sherwin LLP, or any wire transfer to arrive in their Client Trust Account, no later than April 12, 2024.

For the foregoing reasons, Plaintiffs respectfully request that this Court approve the compromise of minor Plaintiffs T.B.'s and K.B.'s claims and order the timely payments set forth herein.

Dated:  February 27, 2024                    HADDAD & SHERWIN LLP


/s/ *Julia Sherwin*

JULIA SHERWIN
Attorneys for Plaintiffs